Darcy M. Goddard (Utah Bar 13426)
Kristin VanOrman (Utah Bar 7333)
Shayla A. Slaymaker (Utah Bar 20004)
**STRONG & HANNI, P.C.**
102 South 200 East, Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 532-7080
Facsimile: (801) 596-1508
E-mail: dgoddard@strongandhanni.com
E-mail: kvanoman@strongandhanni.com
E-mail: sslaymaker@strongandhanni.com

*Attorneys for Defendant Clearfield Police Department*

**IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
NORTHERN DISTRICT OF UTAH**

| | |
|---|---|
| Cheryl Jones and Cory Jones,<br><br>Plaintiffs,<br><br>v.<br><br>City of Clearfield, a municipal entity; Detective Christensen, in his individual capacity; John Doe Officers 1-5, in their individual capacities,<br><br>Defendants. | **CLEARFIELD DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Civil. No. 1:26-cv-00016<br><br>The Honorable Dustin B. Pead<br>United States Magistrate Judge |

Under Federal Rule of Civil Procedure 12(b)(6) and DUCivR 7-1(A)(4)(a), Clearfield

City (Clearfield), "Detective Christensen," and John Doe Officers 1-5 (collectively, Clearfield

Defendants), by and through undersigned counsel, respectfully move this Court for an order

dismissing Plaintiffs Cheryl Jones' (Cheryl[1]) and Cory Jones' (Cory) (collectively, Plaintiffs) Amended Complaint[2] and all claims and causes of action alleged therein.

**CONCISE STATEMENT OF RELIEF SOUGHT
AND SUMMARY OF ARGUMENT**

Plaintiffs allege violations of the Fourth and Fourteenth Amendments (Counts 1 and 2, respectively), and "Municipal Liability Under 42 U.S.C. § 1983 (Monell)" (Count 3), in connection with the Clearfield Police Department's (Clearfield PD) March 2024 emergency response and investigation of the tragic death of Plaintiffs' adult daughter Makia Dawn Jones (Makia).  Plaintiffs' claims are fatally deficient as pleaded, and they should all be dismissed.

Qualified immunity bars Plaintiffs' claims as against Detective Christensen and any other officer employed by Clearfield PD who is or could be named in an individual capacity, including the "John Doe" defendants.  Plaintiffs have not shown, and they cannot show, that any of the conduct alleged in their Amended Complaint violated clearly established law.

In addition, in specific regard to Detective Christensen, other than listing him on the caption and describing him in paragraph 8, Plaintiffs' Amended Complaint fails to mention him at all.  The Amended Complaint is devoid of any specific factual allegation as would show Detective Christensen's presence during or involvement in the events alleged, let alone facts sufficient to show Detective Christensen's personal involvement in any alleged constitutional violation.  For that reason, as well, Plaintiffs' claims against him must be dismissed.

---

[1] Clearfield Defendants mean no disrespect by the use of first names.  Because Plaintiffs and their daughter share the same last name, first names are used to differentiate between them.

[2] Plaintiffs' Amended Complaint (Am. Compl.), Doc. 18, filed April 21, 2016.

Finally, Plaintiffs' allegations in support of *Monell* liability as against Clearfield City (Count 3) are also deficient as a matter of law.  Plaintiffs fail, for example, to allege facts in support of an alleged policy, practice, or custom of Clearfield City that resulted directly in the acts, omissions, or injuries of which Plaintiffs complain.  Instead, they refer only to allegedly deficient training or supervision regarding: (a) "treatment of occupants during emergency scenes"; (b) "limits of consent searches and execution of searches in crisis settings"; and (c) "use of force or coercion against family members."[3]  Yet, hyperbole and conclusory statements aside, the mistreatment alleged by Plaintiffs is comprised of complaints that officers "yell[ed]" at them and "push[ed]" them out of the room[4] where officers were attempting to treat Makia's injuries, that officers treated Plaintiffs as "hostile or uncooperative," and that officers "denied or obstructed" Plaintiffs' requests for personal items while the home was still an active crime scene.[5]  Even taken as true, which we must at this stage, Plaintiffs' allegations are insufficient as a matter of law to state a constitutional violation, and they are similarly insufficient to support Plaintiffs' municipal-liability argument that their injuries, if any, were caused by any policies, customs, or practices of Clearfield City.

Each of Plaintiffs" claims should be dismissed, with prejudice, and this case should be terminated.

---

[3]  *Id*. at ¶ 32(a)-(c).

[4] *Id*. at ¶ 14.

[5] *Id*. at ¶ 16.

3

## STATEMENT OF RELEVANT FACTS[6]

1.    Plaintiffs Cheryl and Cory Jones are the parents of now-deceased adult daughter Makia.[7]

2.    On March 27, 2024, Cheryl found Makia in Plaintiffs' home, where Makia was "hanging by a black nylon ligature which was attached to a metal rod in the ceiling."[8]

3.    Plaintiffs "cut Makia down and performed CPR."[9]

4.    "Emergency services were [also] contacted"[10]

5.    When officers arrived, Plaintiffs advised them that Makia had "a pulse and that Narcan was available upstairs."[11]

6.    Plaintiffs allege they were "yelled at, ordered out, physically pushed or forced from the room, and [were] treated as hostile or uncooperative despite the emergency circumstances."[12]

---

[6] Clearfield Defendants accept these allegations as true for purposes of this motion to dismiss only.  If this motion is denied, Clearfield Defendants reserve the right to challenge these facts in discovery and to enter additional facts into the record as necessary and appropriate.

[7] Am. Compl., Doc. 18, at ¶ 1.

[8] Affidavit of Plaintiff Cheryl Jones in Support of Complaint, Doc. 1-1, filed February 13, 2026, at ¶ 4(a)); Affidavit of Plaintiff Cory Jones in Support of Complaint, Doc. 1-2, filed February 13, 2026, at ¶ 4(a)).  Although Plaintiffs now restrain their description of the incident to "discovering their daughter Makia in medical distress inside their home," Am. Compl. ¶ 10, their sworn affidavits describe the tragic situation more sufficiently.

[9] Am. Compl., Doc. 18, at ¶12

[10] *Id.* at ¶11.

[11] *Id.* at ¶13.

[12] *Id.* at ¶14.

7. Plaintiffs further allege that officers supposedly "prioritized control of the scene and searching the residence over respectful treatment of Plaintiffs and urgent lifesaving concerns."[13]

8. Plaintiffs describe the circumstances as "chaotic."[14]

9. Plaintiffs allege they requested "access to personal items including a phone, keys, and shoes in order to contact family members and travel to the hospital," but officers "denied or obstructed those requests."[15]

10. Officers asked "multiple family members" for consent to search Plaintiff's' home, to which the officers received "inconsistent responses."[16]

11. Officers obtained a search warrant to search Plaintiff's' home.[17]

12. Plaintiffs allege that officers, while executing the search warrant, "did so in an unreasonable manner and beyond what was reasonably necessary under the circumstances."[18]

13. Plaintiffs do not allege or describe what about the officers' warrant execution was "unreasonable" or what was "beyond what was reasonably necessary under the circumstances."[19]

---

[13] *Id.* at ¶ 15.

[14] *Id.* at ¶ 17.

[15] *Id.* at ¶ 16.

[16] *Id.* at ¶ 17.

[17] *Id.* at ¶ 19. Plaintiffs allege they agreed to a search of their home, generally, but for "private rooms" they wanted the individual who resided in each to be present for the search. *Id.* at ¶ 18.

[18] *Id.* at ¶ 19.

[19] *Id.*

14.     Plaintiffs also allege that officers "prematurely concluded the matter was suicide, failed to adequately preserve evidence, failed to fully process the scene, and failed to meaningfully investigate suspicious or disputed circumstances raised by Plaintiffs."[20]

15.     Plaintiffs do not allege or describe what evidence was supposedly not "adequately preserve[d]," in what way the scene was not "fully process[ed], or what "suspicious or disputed circumstances raised by Plaintiffs" were supposedly "not meaningfully investigated." [21]

16.     Last, Plaintiffs allege that "body-camera footage was withheld, incompletely produced, or excessively redacted."[22]

17.     Plaintiffs do not allege or describe what body-worn camera footage was "excessively redacted" or "incompletely produced," nor do they explain what they believe was "withheld" (or why or when or by whom). [23]

## LEGAL STANDARD FOR MOTION TO DISMISS

Under Rule 12(b)(6), a motion to dismiss should be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[24] All well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the non-movant.[25] To that end, to survive a motion to dismiss, the complaint must allege enough facts, taken as true, to make the

---

[20] *Id.* at ¶ 20.

[21] *Id*.

[22] *Id.* at ¶ 21.

[23] *Id.*

[24] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[25] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

claim to relief "plausible on its face.'"[26]  This requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[27]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[28]  Instead, the court must also disregard conclusory allegations and instead look to the remaining factual allegations to see whether the plaintiffs have stated a plausible claim."[29]

Generally, a Rule 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to . . . the court" so that "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[30] Notwithstanding that general principle, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.[31]  "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."[32]

---

[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[28] *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original); *see also Southern Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

[29]  *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)) (cleaned up).

[30] Fed. R. Civ. P. 12(b).

[31] *GFF Corp.*, 130 F.3d at 1384-85 (citing cases from numerous courts of appeal).

[32] *Id.* at 1385.

## ARGUMENT

**1.      Qualified immunity bars Plaintiff's' claims as against individual officers, including Detective Christensen and all other "John Doe" officers of Clearfield PD, for alleged violations of the Fourth and Fourteenth Amendments (Counts 1 and 2).**

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[33]  Government officials are entitled to qualified immunity "in all but the most exceptional cases."[34]

Once a defendant invokes the affirmative defense of qualified immunity, the plaintiff must satisfy a two-part test.[35]  As part of this "heavy two-part burden," the plaintiff must first establish the defendant's acts or omissions violated a constitutional or statutory right.[36]  Next, the plaintiff must show the right at issue was clearly established at the time of the defendant's unlawful conduct.[37]  "In assessing whether a right was clearly established, the court must look at the objective legal reasonableness at the time of the challenged action and ask if 'the right [was] sufficiently clear that a reasonable officer would understand that what he [was] doing violate[d] that right.'"[38]  In addition, "[t]he right allegedly violated must be defined at the appropriate level

---

[33] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[34] *Boyett v. Wash. County*, 2006 WL 3422104, at *14 (D. Utah Nov. 28, 2006) (Cassell, J.) (unpublished) (citing *Tonkovic v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998)).

[35] *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000).

[36] *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995); *see also Siegert v. Gilley,* 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' . . . is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.").

[37] *Id.*

[38] *Boyett*, 2006 WL 3422104, at *14 (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

of specificity before a court can determine if it was clearly established."[39]  A court must take care not to define the right in too general of terms.[40]  If the plaintiff fails to satisfy any part of that inquiry, the court must grant qualified immunity to the individual-capacity defendants.[41]

> **A.**     **Detective Christensen and all other officers of Clearfield PD are entitled to qualified immunity in connection with Plaintiffs' claims for alleged violations of the Fourth Amendment (Count 1).**

In support of their Fourth Amendment claim (Count 1), Plaintiffs allege that, on arriving to provide emergency services and to investigate a 911 complaint that Makia had been found hanging from the ceiling by a ligature,[42] officers supposedly "unreasonably seized, restrained, expelled, or controlled Plaintiffs inside their own residence during a family medical emergency."[43]  Plaintiffs further allege that officers supposedly "acted unreasonably in the manner they obtained, conducted, or executed any search of the home."[44]  This, because officers first requested consent to search Plaintiffs' home[45]—which was at the time an active crime scene—and then, when full consent was not given, officers obtained a search warrant allowing

---

[39] *Wilson*, 526 U.S. at 615 (requiring "a particularized, fact-specific analysis" regarding whether a constitutional right was clearly established).

[40] *Leiser v. Moore*, 903 F.3d 1137, 1140 (10th Cir. 2018).

[41] *Pearson v. Callahan*, 555 U.S. 223 (2009).

[42] Although Plaintiffs now describe this as simply "medical distress inside their home," affidavits previously submitted describe the situation more sufficiently (*e.g.*, Aff. of Pl. Cheryl Jones in Support of Complaint, Doc. 1-1, filed February 13, 2026, at ¶ 4(a)): "On the afternoon of March 27, 2024, I discovered my daughter Makia Dawn Jones hanging by a black nylon ligature which was attached to a metal rod in the ceiling.").

[43] *Id*. at ¶ 25.

[44] *Id*. at ¶ 26.

[45] *Id*. at ¶¶ 17-18.

them to search Plaintiffs' home.[46] Plaintiffs further allege that, in executing the warrant, officers supposedly acted "in an unreasonable manner and beyond what was reasonably necessary under the circumstances."[47] Plaintiffs provide no factual detail in support of their conclusory statements that officers acted "in an unreasonable manner" or executed the warrant in a manner "beyond what was reasonably necessary under the circumstances."

Plaintiffs do not identify, nor can they, any case law to indicate that homeowners' Fourth Amendment rights are violated when officers request consent to search a home where a crime was just committed and then, once full consent is denied, those officers obtain a judicially authorized search warrant allowing the search. Nor do they identify any case law as would support a specific or heightened standard of care when officers are dealing with grieving family members or other victims of tragedy.

**B.      Detective Christensen and all other officers of Clearfield PD are entitled to qualified immunity in connection with Plaintiffs' claims for alleged violations of Substantive Due Process (Count 2).**

Substantive due process protects only against government conduct that is so "egregious" that it violates the "decencies of civilized conduct" or "shocks the conscience."[48] The Supreme

---

[46] *Id*. at ¶¶ 17-19. True and correct copies of the search warrant and search warrant affidavit referenced in paragraph 19 of Plaintiffs' First Amended Complaint are attached hereto as Exhibits A and B, respectively.

[47] Am Compl., Doc. 18, at ¶ 25.

[48] *County of Sacramento v. Lewis,* 523 U.S. 833, 846-49 (1998). *See also id*. ("To recognize a substantive due process violation . . . when only midlevel fault has been shown would be to forget that liability for deliberate indifference . . . rests upon the luxury enjoyed by [] officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.")

Court has stated[49]:

> Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other.  Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs.  They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance."

Here, in support of their Fourteenth Amendment claim for alleged violation of substantive due process (Count 2), Plaintiffs allege that officers employed by Clearfield PD, acted with "deliberate indifference" in a manner "that shocks the conscience" by "aggressively mistreating grieving parents during an active life-threatening emergency and by disregarding Plaintiffs' dignity and family integrity interests."[50]  Although they do not provide any specific details in connection with this bald allegation, it appears Plaintiffs are referring back to allegations that officers "yelled at" them, "ordered [Plaintiffs] out" of the room, "physically pushed or forced [Plaintiffs] out of the room, and treated [them] as hostile or uncooperative despite the emergency circumstances,"[51]—i.e., the need for "urgent lifesaving"[52] measures by emergency services personnel.  Plaintiffs themselves described the scene as "chaotic" and an "emergency."

Even if those factual allegations were true—which Clearfield Defendants deny— Plaintiffs provide no case law, nor can they, to support their argument that officers who behave brusquely toward family members during a "chaotic" and "emergency" situation violate

---

[49] *Id.* at 853.

[50] *Id*. at ¶ 29.

[51] *Id*. at ¶ 14.

[52] *Id*. at ¶ 15.

11

substantive due process.  The same is true for Plaintiffs' alternative theory of abuse by law enforcement, i.e., that Plaintiffs "requested access to personal items including a phone, keys, and shoes"[53] from inside Plaintiffs' home (again, still an active crime scene) "in order to contact family members and travel to the hospital."[54]  On the facts alleged, Plaintiffs cannot successfully allege a violation of substantive due process at all, much less that said violation was "clearly established" as such in March 2024.

**2.      Detective Christensen must also be dismissed because Plaintiffs fail to allege that he was personally involved in any purported constitutional violation.**

In addition to qualified immunity, Detective Christensen should be dismissed due to Plaintiffs' failure even to allege that he was personally involved in any alleged constitutional violation.  "Individual liability under [Section] 1983 must be based on personal involvement in the alleged constitutional violation."[55]  Other than listing him on the caption and describing him in paragraph 8, Plaintiffs' Amended Complaint fails to mention Detective Christensen by name at all.  Indeed, the Amended Complaint is devoid of any specific factual allegation as would show Detective Christensen's presence during or involvement in the events alleged, let alone facts sufficient to show Detective Christensen's personal involvement in any alleged constitutional violation.

For that reason, as well, Plaintiffs' claims against Detective Christensen must be dismissed.

---

[53] *Id*. at ¶ 16.

[54] *Id*.

[55] *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).

**3.      Plaintiffs' Fourth Amendment claim also fails because the search was conducted pursuant to a judicially authorized warrant.**

Plaintiffs' Amended Complaint alleges that officers' search of their home was "unreasonable."[56]  They provide no specific factual allegations in support of the purported "unreasonableness" of the search or the manner in which it was conducted.  Furthermore, they acknowledge that the officers obtained judicial search warrant beforehand.  The Supreme Court has held that "where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.'"[57]

In addition, although Plaintiffs describe the warrant itself as "unreasonable," in fact it was narrowly focused on items associated with "the attempted suicide of the victim, including, but not limited to, ropes, cords, leashes, and tow straps.  Also including any documents, whether written or typed, electronically or physically, of intended suicide or self-harm."[58]  Officers' collection of these items, as well as any drug paraphernalia found during the search, conforms to the scope of the judicial authorization, notwithstanding Plaintiffs' disagreement with it.

---

[56] Am. Compl., Doc. 18, at ¶ 19.

[57] *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)).

[58] Exs. A-B hereto.

**4.**     **Plaintiffs' municipal liability claims against Clearfield City fail as a matter of law because Plaintiffs do not allege sufficient facts to support the existence of a municipal policy, practice, or custom that was the direct cause of any alleged constitutional violation.**

In *Monell v. Department of Social Services of New York City,* the Supreme Court held that a municipality cannot be held liable under Section 1983 "solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under a *respondeat superior* theory."[59]  Thus, for Clearfield City to be liable under 42 U.S.C. section 1983, Plaintiffs must allege both that there was "deprivation of [] rights, privileges, or immunities secured by the Constitution and laws of the United States"[60]—which Plaintiffs cannot for reasons stated previously—and that the alleged violation resulted directly from the municipality's own policy, practice, or custom, or a decision by an official with final policymaking authority.[61]  Plaintiffs must also describe with sufficient and specific facts evidence of deliberate indifference on the part of the municipality in maintaining or permitting the policy or custom at issue.[62]

Plaintiffs' allegations in support of *Monell* liability here are deficient as a matter of law. Plaintiffs fail, for example, to allege facts in support of an alleged policy, practice, or custom of Clearfield City that resulted directly in the acts, omissions, or injuries of which Plaintiffs complain.  Instead, Plaintiffs refer only to broadly stated, allegedly deficient training or supervision by Clearfield City regarding: (a) "treatment of occupants during emergency scenes";

---

[59] 436 U.S. 658, 691 (1978).

[60] *Fowler v. Stitt*, 104 F.4th 770, 797 (10th Cir. 2024).

[61] *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020) (quoting *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1033 (10th Cir. 2020)).

[62] *Id.*

14

(b) "limits of consent searches and execution of searches in crisis settings"; and (c) "use of force or coercion against family members."[63]  Yet, hyperbole and conclusory assertions aside, as discussed above, the mistreatment alleged by Plaintiffs is comprised of complaints that officers "yell[ed]" at them and "push[ed]" them out of the room[64] where officers were attempting to treat Makia's injuries; that officers treated Plaintiffs as "hostile or uncooperative"; and that officers "denied or obstructed" Plaintiffs' access to personal items while the home was still an active crime scene.[65]

Even taken as true, which we must at this stage, Plaintiffs' allegations are insufficient as a matter of law to state a constitutional violation.  They are similarly insufficient to support Plaintiffs' municipal-liability argument that their injuries, if any, were caused by any policies, customs, or practices of Clearfield City,  or that Clearfield City was deliberately indifferent to constitutional risks inherent to the policies themselves.

Furthermore, because officers obtained a warrant after Plaintiffs refused their full consent, it is unclear what additional training on "consent searches," even if warranted, would have accomplished.  Similarly, because Plaintiffs never identify any evidence that was supposedly "inadequate[ly] preserved," or any body-worn camera footage that was supposedly "improperly handled,"[66] those alleged policies of Clearfield City, as pleaded, seemingly bear no relationship to the facts alleged by Plaintiff in support of their claimed constitutional deprivations and injuries.

---

[63] *Id.* at ¶ 32(a)-(c).

[64] *Id.* at ¶ 14.

[65] *Id.* at ¶ 16.

[66] Am. Compl., Doc. 18, at ¶ 32(d)-(e).

Plaintiffs' Amended Complaint is deficient as a matter of law as to Clearfield City, and those claims should be dismissed claims.

**CONCLUSION**

For the foregoing reasons, Plaintiffs Amended Complaint is fatally flawed as to Clearfield Defendants, and to each and all of them.  Plaintiffs' claims as against the individual-capacity defendants are barred by qualified immunity.  Moreover, specific to Detective Christensen, Plaintiffs' claims are barred, as well, because Plaintiffs do not allege any specific action or involvement by him as would be required to establish personal liability for a constitutional violation.

Plaintiffs' municipal-liability claims as against Clearfield City are deficient as a matter of law, as well.  Plaintiffs' allegations are facially inadequate to state a constitutional violation, and they are similarly insufficient to support an argument that Plaintiffs' injuries, if any, were directly caused by any policies, customs, or practices of Clearfield City.

Plaintiffs' Amended Complaint, and all claims and causes of action set forth therein, should be dismissed, with prejudice, and this action should be terminated

Respectfully submitted this 5th day of May, 2026.

**STRONG & HANNI, P.C.**

/s/  Darcy M. Goddard
Darcy M. Goddard
Kristin A. VanOrman
Shayla A. Slaymaker
*Attorneys for Defendant Clearfield Police Dept.*

## CERTIFICATE OF SERVICE

I certify that on this 5th day of May 2026, a true and correct copy of the foregoing

Clearfield Defendants' Motion to Dismiss Plaintiffs' Amended Complaint as served on the

following by the method indicated below:

| | | |
|---|---|---|
| Cheryl Jones | ( ) | U.S. Mail, postage prepaid |
| Cory Jones | ( ) | Hand Delivery |
| | ( ) | Overnight Mail |
| | ( ) | Facsimile |
| | (X) | Email |
| | (X) | E-filing Notification |

*/s/ Darcy M. Goddard*